According to law, that's a United States dishonorable court. This is generally when I say please be seated, but I guess that's not necessary in this format. Good morning to both of you. First case for the record United States versus john Philip page number 23406 21 We have two cases this morning, both handled in this manner. I hope it was convenient for the parties and I'm sorry for the difficulties in each case, actually, that caused them to be delayed. I hope all is well today. So it looks like Miss Morgan gets to go first. Yes, Your Honor, and I'm not sure what happened to my camera that was facing that I was facing apparently Um, so I would ask the court. Bear with me. It was working when we did the test run Good morning, Your Honors. Opposing Council, may it please the court. My name is Kim buyer Jones Morgan and I represent the appellate john Philip page junior referred to here as Philip page. Your Honor, I intend to begin with the brutal issue and then address any remaining issues as the court directs and as time permits. The moment the jury heard that Philip that Thomas page had pled guilty. After already hearing the unredacted superseding indictment that Thomas page adopted on their own and that explicitly named Philip page as his co conspirator. The Bruton violation was complete and incurable. From that point forward, the jury was not evaluating the page based on individualized proof, but rather through the lens of his brother's confession. A confession that they were not told was a confession, a confession that was woven into the very structure of the trial itself. As a result, the trial was irreparably tainted. This error was not harmless. And severance should have been granted and I'll turn it over to the court on that issue. Well, don't quite turn it over to us. So why don't we hear from you and you can wait for our questions. Yes, Your Honor. Beyond the Bruton violation we have The court. Well, I don't know you're moving beyond that issue. I was thinking you would elaborate on that a little bit. Okay. But Where did the end of the government or the court or otherwise ever informed the jury. That your clients. Well, it's been to be the right. Give me the situation. You have several different Factual events that occurred. What would you say is the most significant one. Where either by guilty plea or by something else, your client by name was mentioned. I'll leave it there. In the guilty plea by the guilty plea by his brother in anything else. Well, I think the most Event through the trial. That impact. You're breaking up. I'm not sure. If the way you move the camera is affected the microphone or Well, I don't know where your microphone is, but more important that we hear you than see you. Your Honor. There we go. For now.  Well, Indicated that Was And maybe I hope I Did. I didn't hear it. It's somebody assisting you right now. All sudden, it was loud. It's my moving a microphone around or what's happening. Okay. It's coming right now. I hope it doesn't go, but I keep doing what you're doing. We can hear you at the moment. Okay. Is that better. Your Honor. At this moment, it is just fine. Okay. What I would say is the most significant event for my client is going to be when his brother's plea was disclosed during the preliminary instruction. And why is that so important. Well, I believe that when that disclosure occurred. That's when the booting violation was complete and in turn and care. How do you respond to the government argument that the brother's guilty plea did not implicate your client directly. Well, I would respond, Judge Ramirez, by pointing out or pointing the court back to the superseding indictment, the very language in the superseding indictment. Pairs the brothers is almost an indivisible unit. Their names are bolded they are referred to as Thomas page and Philip page or the defendant. And it was almost as though if one brother acted the other brother also simultaneously. And so I would submit that that assertion is just not in line with the language in the superseding indictment. Isn't there a difference between the indictment. And I believe the district court gave an instruction that the indictment was an accusation only. How do you tie that to Anything in the record where the brother implicated Mr. Your client, Mr. Page directly. Is there a factual basis in the record for us to look at that the jury saw That the jury saw what the jury saw was the superseding indictment in the record, you have The court acknowledging that Thomas page. Played admitted that the allegations and count one were true. You have the government also acknowledging this fact in the record that Thomas played page admitted that the allegations were true. And that the allegations and count one were true. But I think that This situation is a bit factually is unique as compared to maybe other cases that have been heard by the circuit up to this point, but it still is in line with Bruton and it's progeny, I would Essentially, once Thomas guilty plea was disclosed that superseding indictment. Essentially, is the plea allocution portion of his guilty plea. So they have given the The Jury. The factual basis essentially to support his guilty. Written involved a confession. Do you have any case that specifically involves a guilty plea with just a plea without a factual basis to support it. I mean, a document called a factual basis or a factual resume. No, your honor. I do not have a case on point. That deals exclusively with the guilty plea. However, the case that was cited by the government was a fifth circuit case on this very issue. It was a second circuit case unpublished opinion. So to this point. I don't have any Case on point to direct the court to however I would Highlight for the court that really based on Bruton itself. The confession is not limited to it being actually a document that's introduced into evidence. One of the cases that Bruton drew from was Douglas V. Alabama. And in that case, the prosecutor called a another codefendant to the stand that had previously been trying and that codefendant to the The entire time of his testimony and the prosecutor essentially read through his questioning that codefendant confession. Onto into the record. And what I would say is that That Allows or that gives this court some guidance that It doesn't have to be a physical confession that's introduced into evidence is the introduction of the information to the jury and that is what Douglas V. Alabama essentially found and that is one of the cases that Bruton pulls from Our Council, you can proceed or Tell us, that's it. Either way. Well, your honor, you think that Beyond the Bruton issue we have an issue with the court not providing limiting instruction with regard to Thomas's plea to inform the jury that His Guilty plea is not to be used as Is limited or limiting instruction with regard to that guilty plea usage as it relates to Philip page and I have, so there was Council was ultimately an instruction to the jury, maybe multiple ones. Indicating the limits that such evidence should be put is your new correctly doesn't correct it doesn't. So Is your, is your principal point that the district court needed to have given this instruction these instructions contemporaneously. Yes, that is my point. Yeah. Okay. And what, what is our standard review isn't an abuse of discretion. If you want to correct me on that, please. Why is it Is permissible in the case law to give it either time it's discretionary. How would you show us it was particularly flawed to wait this time. To, and if I Where you may not be understanding the question I'm asking you generally is up to the district court and we view abuse of discretion when such an instruction is given so long as it's given, and it was here. So why was the failure to give it to contemporaneously Reversible error in this case when often it is not Well, yeah, I don't argue that the standard of review was the Novo and it because it goes to The due process. Essentially, and so with that being said, I don't think abuse of discretion is the appropriate standard for this court to review that issue under the government asserts that The appropriate standard is plain Error, but even under a plain error review standard, your honor. I think that We still get to a point where the court should reverse and remain when you look at One of the cases that I cited corral it spoke about Even in a situation where the Limiting instruction was not requested, but we're aggravating circumstances are present that Those aggravating circumstances can I can the prejudice in such a way. That it warrants This case to be reversed and remanded and I think this case is far more egregious than corral and one of the cases that the government side. It was the Luca and the Luca. I'm sorry to interrupt. Brett. I can't hear any more. The sound went out. Well, I'm hearing fine. Maybe it's just let you know, Brett, but Andy I told him so something happened with Judge Ramirez apparently With her equipment. I was the judge. We're Kim. You want to say something Council speak. No, I was just Don't I just want to see if it's working now. Oh, okay. First line of the Declaration of Independence. I mean, whatever you want to say. Well, I was just going to continue with the Luca that That judge for marriage. That with the Luca that case also spoke or Suggested that aggravating circumstances could also Tighten the prejudice in a case and I've detailed in my brief a number of aggravating circumstances that were present throughout this case, beginning with the unredacted superseding the indictment being disclosed to the Perspective jurors by having the government read portions of the indictment to them. And then thereafter, you have the disclosure of Thomas's plea without contemporaneous limiting instructions on you have the disclosure of Clayton working with more contemporaneous Limiting instructions as well as his plea document you have the reiteration of Thomas's plea to the trial. Again, with no contemporaneous limiting instructions at any point and essentially at the conclusion of the terminal, you have the government. Relying on Thomas's plea as well as works as plea as substantive evidence of guilt. And I think that Even if the court were to find that no limiting instruction was requested or it's not Requested for this particular guilty plea, I would submit that it is. And I think that the noble review would apply. But even if you were to apply the plane error standard of review. I do think that this case is Far more egregious Israel and is in line with what the Lucas suggested in terms of aggravating circumstances. Right. There 20 seconds to I would just submit to the court that I Identified a number of issues in this case and I don't have the time to address them all, but I do believe that each one independently and even taking collectively support this case being reversed and remanded and I would ask the court to do just that. All right, counselor. I'm glad you were able to work through the technical problems and your argument was was clear. Mr. Gibson. Thank you, your honor. Are you able to hear me okay Yeah, thank you, your honor. Please support counsel. We appreciate the time to make our presentation today. Briefly, I would touch Just for a moment on we had filed a sub letter with the court clerk on July 14 2025 council for Mr page father response to that that letter really just outlined a Somewhat of a, I don't know if it's a gap or an in clarity in the art in the record that the record on appeal as cited by both the government and By Council for Mr page indicated that Philip page or rather Thomas page and entered a guilty plea before the superseding indictment was actually handed up by the grand jury. And to clarify, if you look at the record on appeal on page 196 both the government and Mr pages counsel will cited that as for that reference. I don't think just remember I've been here. Or I wasn't noticing that. Is that can you is that true. He came here. Something else happens. Let's stand down and see if it can correct it. Grad or somebody Channels where we're looking at it. We're gonna close any other program that's running on her computer as well. That might be taken over the sound. One second. Testing testing. Yes, she's going to use the iPad. So I'm gonna bring the I'm gonna bring the iPad in. Okay, we can do that coming in now. Kim, can you hear me? Yes. Okay, I am going to use my iPad. Instead of the instead of the computer. Okay. I'm so sorry, that sound just, it just went. Council want to start up again let's make sure just from yours can hear you. Yes, your honor, are you able to hear me okay. Yes, thank you. Thank you. Sure. Thank you. To clarify, our letter was filed on July 14, and simply to bring some elimination to the sequencing of events and so both the government and the Mr. Page had in their briefs indicated that Thomas page had entered a guilty plea prior to the superseding indictment. And this is really related to a statement that is on the record on appeal on page 196, which is a portion of judge Jordan's order on a motion. The record simply what we're trying to clarify is that the sequencing of events is that the council for Thomas page in the court below filed a notice of intent to enter a guilty plea. After that, the superseding indictment was handed up. After that, motions were filed. And eventually, Thomas pages counsel withdrew the original notice of intent to entry guilty plea and a factual basis that he had prepared and filed a new notice. And after that, after the superseding indictment had been handed up for a couple of months. At that point, Thomas page entered a guilty plea. So we just want to clarify that. We determined that the Pacer docket sheet for Thomas page, I don't believe is in the record on appeal, but it is a matter of record in the case below and can be easily accessed through Pacer. In any case, that was the reason for the letter to clarify that sequencing of events as appeared to be relevant to some of the arguments. In regard to the Bruton argument, I would first point the court's attention to page 51 pages brief. And the statement there at the beginning is that Thomas pages guilty plea account. One of the superseding indictment functioned as a testimonial confession directly implicating Philip page and the conspiracies. And I think that wording is very key here. Crawford and Bruton focus on the fact that there must be a testimonial statement or confession to give rise to a Bruton issue and is set forth in the government's brief. This is cited on page twenty nine of our brief. The confrontation club forbids admission of testimonial out of court statements against a criminal defendant when the declarant is unavailable and the defendant had no prior opportunity to cross examine him. And essentially, in the government's view, the appellant has taken the simple fact of a guilty plea and attempted to combine that with other facts, including or not even facts, but the allegations in the superseding indictment. Other facts that are listed within the appellant's brief and stated on page fifty two of the appellant's brief that the jury could reasonably infer that his guilty plea encompassed an admission to Phyllis involvement in the conspiracy. And in further states, this inference was strengthened by the government's emphasis on a codependent plea process by defendant works. And so it is this it is not, in our view, even a Bruton issue, a confrontation clause issue, because what was admitted or what came into the record before the jury was simply the fact of the guilty plea. And in fact, Thomas Page's own counsel referenced that because your trial strategy appeared to be, yes, my client did that count one, but did not do that count two, which is the money laundering conspiracy. So for that reason, in our view, there is no Bruton issue at all. The court did not admit any allocution by Thomas Page, nor was a factual basis entered into the record or exposed to the jury. And finally, even if there had been some impingement on a confrontation clause issue, it is subject to harmless error. When the evidence of guilt is otherwise substantial, looking at pages thirty one to thirty two of the government's brief, the evidence was significant and convincing. As to Philip Page, he owned half of Page Capital. He knew that they were using that bond, which was essentially a fake account as collateral. He attended the closing. He signed promissory notes. He made personal guarantees. Both of the defendants signed an affidavit indicating that the money was only for business purposes when it was clearly used for other purposes. The defendant works who testified repeatedly that he warned both Thomas and Philip Page that they were going to get caught or could get caught. And both Thomas and Philip Page make quick payments to the bank when the bank flagged the fact that the loan was in arrears. And so for that reason and all those reasons, we believe that there's no real issue before the court on the issue. I would further note that the court did give close instructions on the fact of the issue of the guilty plea to count one by Thomas Page. And I believe completely would have absolved any potential error there, which there was not. Looking at pages 25 and 26 of the government's briefing, do you see where, again, the government, the appellate's argument appears to be that the superseding indictment or the references of the summary to that, that in combination with the fact that Thomas's plea gave rise to the burden issue. But the court clearly, after the jury was sworn, gave an instruction that the indictment was only an accusation and nothing more, was not proof of guilt or anything else. And then at closing, reiterated those same instructions. The indictment or formal charge is not evidence of guilt. The defendant is presumed by law to be innocent. And it further went into the fact that the plea, the fact that an accomplice has entered a plea of guilty to the offense charge is not evidence of the guilt of any other person. And, of course, this is on page 26 of the government's brief, gave a pattern instruction on multiple defendants and multiple counts, requiring the jury to follow the instruction that each count and the evidence pertaining to it should be considered separately. And the case of each defendant should be considered separately and individually. And so all of that, I think, addresses both the issue of or the argument that there is a prudent issue simply by virtue of a guilty plea, the fact of the plea being entered, along with some combination with the superseding indictment. So we believe that the district court thoroughly addressed that and prevented any type of error that could be addressed from that period. And then as far as the issue on the guilty plea by the co-defendant, I just referenced some of those instructions by the court below. Judge Jordan thoroughly instructed the jury and carefully as to the effect of what a guilty plea would have. And again, the government offered, I believe this is a reference to co-defendant works as guilty plea. The plea agreement and factual basis were offered without objection. They were admitted. And again, the court addressed those with the multiple defendant, multiple count instructions and carefully and thoroughly advised the jury about that they had to consider each defendant separately and that the fact of a guilty plea by one defendant did not in any way mean that another defendant had committed the same offense. About the superseding indictment. Yes, right. Objection to it included delay in the indictment. It seems to me that perhaps more significant issue in there is perhaps the interference with a key witness that Philip may have been planning to use his own brother. Let me ask you. I haven't looked at it as a factual basis for Thomas's plea. Implicate his brother. Would he have been facing potential perjury charges if he had testified even without the superseding indictment because of what's in the factual basis? I'm going off my recall at this point. So I believe that there obviously was a written factual basis for Thomas Page. It is in the record below, but not on the record on appeal because it was not part of this dependence of Phillips pages record. I don't want you to go outside the record. So if you really can't answer it from what is here, it does seem to me the government has an awful lot of leeway or superseding indictments and interfering with witnesses that are the result of that. And the district judge gets to consider it. Was the argument made at the district judge that this was intentional or something act by the government to keep the brother from testifying? Yeah, my recall of that motion. I'm looking at pages 51 and 52 of the government's brief. We're looking at that, too. The defense below made a very thorough argument on these issues and in fact attacked superseding indictment, requested severance, requested dismissal on multiple grounds. And Jess Jordan did a very thorough job. I believe that our oral argument on this and issued a written order on this. And at the end of the day, I think the argument was you are preventing me from calling this witness. And Jess Jordan got into that issue with the defense counsel. And I'm looking again at page 52 of our brief. The district court held a hearing in which Phillips counsel admitted that he could not proffer what Thomas Page would testify to. Now, this would have been July 2022. The initial factual basis that Thomas Page had filed was filed months before that. And so there would be some indication from that. Of course, that was withdrawn. And eventually another one was submitted. But the court found after the hearing on the motion that Philip Page could not show or did not show that the filing of the superseding was prompted by the mere possibility of Thomas Page testifying. And that Thomas Page or Philip Page could not show prejudice because he did not know precisely what Thomas Page would testify about. So certainly you would assume and from the cumulative evidence in this case of trial that these were brothers. They were well familiar with each other. They work together. They were frequently seen together. You would assume that Philip Page, that the person would know what his brother was going to say. But there was no record put forward. In other words, the argument being the government is depriving us of this witness by superseding. And that was the real objection. But even then, they could not say, well, this is what this witness would say. So they could not proffer that. So the judge essentially denied the motion and said, no, I'm not going to grant the relief request. I don't know if that answers your question, Your Honor. Will you give me the answer that you can? Go ahead. Okay. And really, Your Honor, those are the main points I wish to make. I think that the primary argument from counsel for the appellant was on the Bruton issue. We don't believe that there was no Bruton issue at all for the reasons stated and just to clarify the record. Unless there are further questions, I'm certainly glad to answer those. We would surrender the rest of our time. All right, counsel. Back to you, Ms. Morgan. You're muted. Yes. With regard to the issue with the motion to dismiss, trial counsel did raise several times that they felt the government was intentionally superseded in order to prevent Thomas Page from testifying. In fact, in the government's response to the defense's motion to dismiss, which starts at ROA 164, it points out that Thomas Page had filed a factual resume and that, essentially, initially, he tried to just say that he and Wirtz were the ones in the conspiracy. However, that was not accepted. His counsel then subsequently filed another factual basis that was more generic. Ultimately, when he did appear before the court, as I noted in my letter, the court did have him acknowledge on the record that all of the events in count one did occur. I do want to switch gears and go back to the Bruton violation. Your Honor, the issue, what the government is attempting to do, is essentially not introduce the factual basis or the transfer from the plea allocation and just inject the superseding indictment, which is essentially Thomas Page's, the details of his confession. His guilty plea is not a bare fact. It is intertwined. Once the superseding indictment was disclosed to the jury and his guilty plea was also disclosed, that is the plea allocation. The government is circumventing, I guess, the traditional way of how a confession would be handled. I would also add is the factual equivalent, yes, it is the functional equivalent, but here we have a situation where the superseding indictment directly alludes to Philip Page. It's not possible that the indictment was only referring to Thomas Page in words. Your Honor, I would just defer the court to my briefing. I think I did brief this in detail and ask the court to reverse and remand. All right. Well, thank you, counsel. Sorry for our technical difficulties and perhaps your own in places, but we're all shared in that. We'll take this case under advisement. Thank you, Your Honor. Thank you. At this point, did we exit the conference? Kim, tell them what to do. Yes. Yeah, you leave the meeting now. Thank you. You're welcome. You ready for the next step, Judge? Are we ready? Let's proceed. Good to have two Judges Emeritus here on the screen. Good morning. Can you hear me? Good morning. I'll call the second case of the morning. Zelma Loeb DeFever versus Mako and other parties. Mr. Dorch, you get to go first. Good morning, Judge Selkirk. How are you? I'm doing well. Good to have both of you with me. I'm sorry that we had to postpone. No, thank you. Thank you for accommodating my needs, Judge. Judge, this is a relatively simple, very complicated case. I don't know another way to say it. Really, it's come down to three issues here. Number one is, did the district court, after the Fifth Circuit's ruling affirming the judgment of no fees, did the district court have any jurisdiction to thereby grant fees after the fact? The second one would be, if the district court, Judge Hanks, did have the authority to grant fees, did he do so appropriately under the Fogarty Standard of the Copyright Act? And the third issue is, if he had jurisdiction to grant fees, if he did it right or wrong under the Fogarty Act, should he have explained it according to the rules, specifically Federal Rule Civil Procedure 52A1? I'm going to go in these orders, Your Honors. Number one is, did the court, Judge Hanks, after the Fifth Circuit's ruling on the prior repeal, have jurisdiction to award fees at all? We do not believe, as outlined in our brief, that the court had any jurisdiction to do so. The court, Judge Hanks, when he ruled on the eight summary judgments, ultimately ruling really on two of them and dismissing six of them, found in his order, specifically, that each party shall bear their own fees and costs, and then he included the Mother Hubbard-type language. That ruling was actually appealed by the defendants in this case. Let me start with them, Mr. George. Let's say there had been no appeal, and then we'll worry with the effective appeal. Let's say there had been no cross-appeal on that that was later dismissed, and instead you have the rest of the case as it proceeded, which is probably not quite fair to say, but the only issue raised by the appellant dealt with non-fee and cost issues. And once we ruled, would the district court have had jurisdiction, in that changed set of circumstances, then to deal with the collateral matter of fees and costs? Yes, Your Honor, because there'd be no finding from the other court, because it is collateral under the Moody case. It's a collateral issue. But here, the judge actually... Let me stop you. The mere fact that the district court put it in his initial opinion, in order, is not conclusive. I believe it is conclusive here, Your Honor, but in your fact scenario, it is not. Well, again, I'll have to re-explain all the premises again, but it's not the mere presence followed by an appeal. It's the cross-appeal that prevents further consideration by the district court. Correct, Your Honor. That was a question. Yeah, well, I believe it does bring up an issue here, because the defendants were unhappy with the ruling on the fees, and they appealed that ruling, which they had the right to do, and they did at times. And as a result of that, it puts the issue square before the court. If Judge Hanks would have been silent on whether or not there were fees or costs awarded, which happens in almost every single case in federal court, then there wouldn't have been an issue, and we could have gone through a Rule 59 motion to amend the judgment to add the fees, which is the normal course of conduct here. But Judge Hanks jumped out in front of a 59, said there's no fees, there are no costs, Mother Harbor language, everybody goes home at the final judgment. That judgment should have either been amended or should have been appealed. And it was appealed. So if you leave my presence behind, why don't you now address the actual issue that we have? I think I might have hit a button. I can still hear you and see you. Sorry, Your Honor, can you hear me now? Yes. Okay, I lost you for a second. Did you have a question or do you need to go forward? I had given you a changed set of circumstances. Just why don't you address the actual procedural situation of this case now? Now, the actual procedural situation here is that Judge Hanks made a ruling on the motion, made a ruling himself, jumped out ahead of any motion for fees and ruled there's no attorney's fees, there's no costs, which he perfectly had the right to do as the judge, and found it was a final judgment. That final judgment, which says no fees and no costs, everybody bear their own, is what this very court, the Fifth Circuit, ruled was affirmed and sent back with no mandate to change anything. So the judgment, which says each party bear their own fees and costs, is a final non-appealable judgment before the court, which was affirmed by the Fifth Circuit. And therefore, we believe that Judge Hanks had no ability to change it after the fact, Your Honor. So give us the case law and the doctrine that you were trying to apply. I believe that we have provided the case law in there. The Moody case is the only case which is really possibly against us. The Moody case deals more with cost than with a timeline to file. But we do believe that Judge Hanks could have amended his judgment within the time period, and that judgment could have gone up on appeal, but either he chose not to or it just wasn't before the court. But the judgment which says no fees and no costs is affirmed with no other mandate being issued, and that's the appellate record 8997. Well, getting back to my hypothetical again, the Fifth Circuit ruling would have been exactly the same if there had not been a temporary appeal that got dismissed. It would have affirmed, but you had indicated that if there had not been for that misstep of the cross-appeal, the mere affirmance by this court would not interfere with Judge Hanks then dealing with costs and fees once he gets the mandate. And, Judge Southwick, you'll have to excuse me. I believe that your hypothetical said if Judge Hanks' original order would have been silent as to fees or costs. Well, a lot of people, including my colleagues, don't understand what I'm saying at times. So I was trying to be clear, and I wasn't, that you have everything else the same, but there's never a cross-appeal. Then I do not. If everything's the same but no cross-appeal, I don't think anything changes, Your Honor. We have a judgment that says no fees and no costs goes up. It wasn't amended by Judge Hanks, which he certainly could have done at the time. It goes up. It gets affirmed with no other mandate from this court going back. That's the, for lack of a better term, live judgment after the Fifth Circuit rules on it. That's before the court. And therefore, there is no jurisdiction for the district court to change that. If Judge Hanks wanted to change it, he could have done it before the appeal, which is what happened every time.  Let's keep working with my hypothetical change facts. Never was a cross-appeal. What is your best case that holds that, that says even though costs and fees are collateral, the judge stands, has something like this in his order. He stands down while the appeal is going on. The appeal affirms. It gets the mandate. The district judge then does what judges often do after an affirmance. They do the other costs and fees. You have any case that says if that had been the scenario, there was no jurisdiction, authority, something for the district court to act? Your Honor, I do not have that off the top of my head. Or in your brief either, I might say. Do what, Your Honor? Or in your brief either, I might say. Yes, Your Honor. We don't have authority. It's one of those things that seems... Let's say that is true. Let's say my premise is, or hypothetical is true, that the district court could have. Are you saying it's the mandate rule? Is it something else that prevents the district court from acting? In the actual situation that we have? Here, the district court went beyond the scope of the mandate that came back from the Fifth Circuit. There was nothing from the Fifth Circuit that said for further proceedings, commiserate with this order. There was nothing that said. Instead, we have a very simple opinion that says the final judgment of the district court is affirmed. What is your articulation of the mandate rule? What does it say? I'm looking at my brief here, Your Honor. We believe the mandate rule is exactly what you do. You follow the mandate. Here, the mandate was as simple as it could possibly be. Are there exceptions to the mandate rule? Yes, Your Honor. There would be an exception. For instance, if the court had awarded fees and said, we, the court, are awarding fees for the cost of the original trial and the original proceedings, and then I will consider appellate fees if they are reasonable and necessary. Later, the court could have done that. What we have here is that, instead, the court made a ruling on the fees. There was no motion to alter the judgment. Judge Southwick, I hate to say the way it's normally done, but the way it's normally done in federal court is you have a final judgment. Within 14 days, you have a motion to amend that final judgment under Rule 59. Then the judge makes their ruling on that and issues a new final judgment or amended final judgment, and that's what goes up on appeal. I'd like to get back to the mandate rule. If your client did not appeal on the fee issue and our opinion did not address the fee issue, how is the fee issue implicated by the mandate? Well, the mandate rule requires, under United States v. Castillo, requires the district court on remand to effectuate our mandate and to do nothing else. Here, the mandate was essentially as simple as it could be. The final judgment from the district court is affirmed. There was no mandate to change anything, to do anything. The mandate rule is basically the Four Corners rule of read the mandate, do what we say, and nothing else. Well, doesn't the mandate rule prohibit a district court on remand from reexamining an issue of law or fact previously decided on appeal and not resubmitted to the trial court on remand? That's really my question following on Judge Southwick's hypothetical. If the issue of fees was not appealed by your client and the mandate or the ruling from this court do not address fees in any way, how is that an issue previously decided that would be covered by the mandate rule? Under your scenario, Your Honor, I believe that the mandate rule applies here because the district court did find that there are no fees. Every party bears their own. Why would we appeal that? Because we like that ruling. Therefore, it doesn't go up on appeal. And then Mr. Edmonds does appeal that, dismisses his appeal, so it's not before the court. So an appeal that is dismissed is given up. Your question is, if we didn't address it in our appeal, couldn't it be addressed there? But I believe it was addressed in your appeal when you affirmed the court's decision that there are no fees and costs. Each party bears their own. Your mandate says we follow. Not your mandate, Your Honor. The Fifth Circuit mandate says we, the Fifth Circuit, say the final judgment is affirmed. All right, counsel. You got something else for us? Yeah, going back, Your Honor, if the Fifth Circuit does find that there is jurisdiction, then we have to go into the fogarty factors. I believe it's very indicative here that the issue that everybody keeps saying is this was an express license issue, therefore it's frivolous, it's unreasonable. We have $1.5 million in fees by the defendants that they admit they billed on a frivolous, objectively unreasonable case that comes down to really a five-page contract. If the defendants believe the case was objectively unreasonable and frivolous, they could have filed an MSJ right after the ruling on the motion to dismiss, when they're not under a 20 standard, and then they could have gotten their ruling there. Instead, they knew the case had fees, and we went on for years of litigation, ran up $1.5 million in fees. We do not meet the fogarty test here. It wasn't frivolous. There was a motion to dismiss that was denied by Judge Hanks. There was years of discovery, at least a year of discovery. The motivation here doesn't stand. There's no motivating factor by punishing or making someone who's a small LLC pay $500,000 to $1.5 million in fees. It was objectively reasonable, or the defendants would have moved day one for summary judgment on the express license issue. That would have been one exhibit. They could have filed a five-page motion for summary judgment with one exhibit. And lastly, Your Honor, to hit the last point is I think that we seem to be talking on two different ends of the aisle between plaintiffs and defendants here. We are not saying that Judge Hanks gave no explanation. He gave his fogarty factors and went through them. He gave absolutely no explanation for the $500,000 other than, I hereby award $500,000. There's no explanation to the low-star factors. There's no finding of reasonableness of the fees, the time incurred, the segregation issues. We believe that under Rule 52A1, Judge Hanks had to not only explain his reasoning, but his wrong. He had to explain, here's why I find that $500,000 is justified. X is the amount of summary judgment fees. X is the amount of deposition fees. But instead, he just took his red pen, divided by three, and did it that way. If a jury would have done that and just said, I'm taking a million bucks and dividing it by five and awarding it $200,000 a party, the court would have certainly looked at that lacking rhyme or reason and just being quick and dirty. Judge Hanks did the same thing. He just said, $500,000, and that violates Rule 52A1. All right, Mr. Deutsch, we'll hear from you again. Thank you, Your Honor. Mr. Edmonds? May it please the Court, I'm John Edmonds. I'm working on behalf of the appellees. There are quite a few, and I represent most of them. I'm going to take them in slightly different order. I don't think that the jurisdictional issue, the mandate rule issues counsel raised really raise an issue that should take up much of the Court's time. So I'm going to try to focus on the other issues, and if the Court has any questions, then I'll focus on that. The only thing I'll point out on the mandate rule issue is that I think it's clear cut under all the questions that Judge Southwick asked, which clearly were, and Judge Ramirez, too, which shows the Court is already aware of the law. But an additional factor just to mention was that when the original judgment came out, of course, fees, statutory fees, are ancillary to that. But just in abundance of caution, the appellees filed their cross-appeal, and then 14 days after that judgment was entered, they dutifully filed their fee motion, which the district court denied, saying I'll take up fees after the merits appeal. And once the district court had made it crystal clear that it had not ruled on statutory fees in its final judgment, and it was deferring the issue of statutory fees after the appeal, they withdrew that appeal as well, not to waste this Court's time with something that wasn't right, which we say was the appropriate thing to do. Counsel, even hindsight's not always 20-20, but it does seem to me that in reflection, maybe that appeal, if it had been continued, would have kept this issue from arising. I think if that appeal had continued, I expect this Court would have said your cross-appeal was premature, and for your sake, we hope that you filed a timely motion for fees 14 days later, because if you didn't, then you're out of time to do that, because you should have done that. Well, if you're right on the mandate rule, that would be so. If Mr. Torch is right, that would not be so. I have a question, Mr. Edmonds. If the fees were purely collateral under Moody, then why file the cross-appeal at all, in an abundance of caution? Well, in hindsight, it was mistaken, and caution being that an aggressive counsel like Mr. Torch would very likely say that, based upon that order, that we couldn't get fees. But then, once the Court made clear that it had not ruled on fees, then we better avail ourselves of the law, realize the mistake had been made, and did not waste this Court's time with a moot cross-appeal, or really a premature cross-appeal. Was the issue of whether the District Court had jurisdiction to go back to the fee issue, given the specific language in the judgment, ever raised below? No, it was not, although the District Court in – well, it was raised below, in the sense that when we filed our – after the appeal, when we filed our renewed motion for appeal, the appellants raised this very same issue, and the District Court ruled against them on that. It's in a footnote in the order, and it's – let's see – it's 9-1-3-6, and, you know, the Court cites Moody, as we had cited, and Judge Southwick had mentioned, too, that that original final judgment didn't affect the ancillary issue of fees. So, it was addressed in the District Court, and the District Court, we think, ruled appropriately. I didn't read the District Court's order to specifically consider the issue of jurisdiction. Can you point me to where it specifically finds that it has jurisdiction? Well, I think it's implicit in that footnote in the sense that if it's an ancillary issue, then the original judgment is not pertinent, nor is the merits appeal. And so, I think it was – I think it was posed by the appellants as an issue of the mandate rule or the waiver rule, and so it was addressed in that fashion with respect to the Moody case. Can you point us to any case with similar language in a judgment where this court or any court found that despite the language in the case, the fee issue was still ancillary? In other words, the cases that you cited to us in your brief did not appear to involve judgments that addressed the fee issue in the same manner as here. Can you point us to a case with a similar judgment? I hope I'm not mistaken, but I believe Moody does. It's almost exactly the same wording. And I think we stopped there with Moody because it was so on point. But I believe Moody did – the original order in Moody said no fees and no costs, and that was why we thought the case was directly on point. But other than Moody, none come to mind, but I think Moody is on point. Mr. Evans, before you pivot, I think Mr. Odom has a question. Judge Odom has a question. Walk me through your understanding of Rule 54. So I take it you recognize that there's a 14-day deadline for the entry of judgment unless there's a statute or court order that otherwise for you to file your motion for fees. So my understanding that your view of how Rule 54 works in this case is that the court – the district court, when you went back the second time, was effectively granting you an extension of that deadline under 54D2B. That's correct. We actually – well, we filed a timely motion which was denied. And there's a case that's cited in – I don't have that on top of my head, but it's cited in the district court's quarter denying the fee motion with leave to refile. And it's a case that collects other cases from the Fifth Circuit. And my understanding, and based on the cases we've seen, is that it's a fairly common practice for district courts to defer the issue of fees until the merits appeal – wisely, I think, defer the issue of fees until the merits appeal has completed and then reset that deadline. And I believe there's a discussion in that case about how when Rule 54 was amended, that was one of the specific things it was amended to do. And it seems like a very prudent thing to do so district courts don't waste their time deciding fee motions that may be moot if the merits appeal is successful. That makes perfect sense to me. So while we're talking about compendiums of cases or compendia of cases, your friends cite Wright and Miller, canonical treatise on federal courts and the federal rules of civil procedure. And in section 3950.4, Wright and Miller says the following. If the court – that would be the district court – orders an extension on a Rule 54 D2 motion, which I take your answer to my previous question to be that's this case, but a notice of appeal has been previously filed and become effective, the extension would be a melody. End of quote. Well, with all deference to my former professor Wright, I don't know exactly what his citation is for that, but I don't know whether you would call it an extension or not. It was denied. It was denied the extension, right? Because Rule 54 would otherwise bar it. You'd already filed one motion and had it denied. The previous judgment that you tried to cross-appeal had denied it. So the only way you're going to get through Rule 54 in this case is to get a 54 D2B extension. I don't think that's something that's been – maybe I missed it. Maybe that's – I don't think it's been raised by the opponents that it was untimely or that it was somehow void because of what's been mentioned. Right now it's the first time I'm hearing it. But that doesn't seem consistent at all with the amendment to Rule 54. And I don't know whether that is an artifact in Wright & Miller that precedes the amendment to the rule. It may very well be. But I think the case law – this is the 2024 supplement that I'm reading from the live version of Westlaw. It's a jurisdictional question, so obviously we have to address it. It doesn't matter if they said it, didn't say it, actively agreed with you that it was, in fact, timely. It goes to the jurisdiction of the district court, so we have to deal with it. Yeah, I guess I would fail to see – again, with all due deference to the late Professor Wright. I fail to see how it's an ancillary proceeding. I understand the notion that an appeal might divest jurisdiction on other issues that are on the merits. But I'm not following their reasoning that it would over something ancillary to it, which is the Rule 54 fees. The ruling is quite blatant, which is that it is ancillary until you choose to cross-appeal it. And once you cross-appeal it, that's your choice, right? You saw the words in the motion. You could have filed the motion to amend the judgment. You could have sought relief from the district court when you saw that it said fees were denied. You didn't. You chose to cross-appeal. Here we are. And we withdrew the cross-appeal, so it became annulled after it became a fact. I think you are correct. If this is a jurisdictional issue, it doesn't matter. It was raised. We'll consult as a panel, but we may give an opportunity for both sides to address what's being raised. It sounds like you're not quite ready to address it. I didn't mean to cut off your dodo if you wanted to pursue that further. But I think that's one way to give you an opportunity since you seem unfamiliar with what he's talking about. Thank you. Let me focus down on the issue of the adequacy of the court's order. Let me stop you there. I'm getting the impression that maybe I did cut off Judge Odom prematurely. I didn't mean to, because I think what I suggested to him doesn't interfere with the human questioning on him. Judge Odom, I invite you to reengage. My apologies if I cut you off prematurely. Mr. Edmonds, back to you. Thank you, Your Honor. So with respect to adequacy, we would direct the court to the fund versus Dan Wilson Holmes case. Which is cited, I believe, in both briefs, but definitely in our brief. It's 789 F. 3rd 573. And the Hunt case specifically references another case from this court. It's Bridgman versus Array Systems, which is 325 F. 3rd 572. And the Hunt case sides with approval Bridgman's award of fees under the Copyright Act, which is not very different than the award of fees in this case in terms of its level of explanatory detail. So now we're dealing with Fogarty, not so much with Johnson, but we're dealing with Fogarty. And Fogarty relies on another case called Hensley versus Eckhart, which is 461 U.S. 424, which speaks to a broad equitable discretion of district courts to award fees that are reasonable and consistent with the purposes of the Copyright Act. And in Bridgman, this court said, the court cited, and we are confident, applied the relevant authorities. It explicitly stated its award promotes the purposes of the Copyright Act. By necessary inference, the higher amount sought by Array was unreasonable. And summary judgment was readily granted. And the district court acted within its discretion in awarding fees. In that case, it awarded a portion of the fees requested. In that case, it was another round number. But we cited a number of cases that say the courts didn't, that there shouldn't be a mini trial. Courts should not become green eyeshade accountants. And that there's certainly adequate evidence in the record. And I think the courts should be mindful of the limited challenges that the appellants made to the fee request. They didn't challenge the hourly rates, which many of them had been discounted for purposes of the motion. They didn't challenge the amount of hours worked. And a number of lawyers were preemptively excluded from the fee request to avoid charges of redundancy. So they didn't challenge the amount of the hourly rates. They didn't challenge the amount worked. What they did challenge was the segregation evidence. And they said most of the fees were for unsuccessful motions. But the district court was well aware, as we pointed out to this court. The unsuccessful motions were motions that were denied as moot because of this successful motion, which ended the case. So they weren't unsuccessful by any means. They were just simply denied as moot. And in view of the limited challenge that the appellants made to the fee claim, it's not surprising the district court did not take some issues up. It did not seem to be in dispute. But under Bridgeman and Hahn, we respectfully submit that the district court's analysis is adequate. It cited the correct authorities. It cited authorities, which to the extent the court would require a lodestar, it cited geophysical, which the entire geophysical case is on lodestar. It only cited a limited number of cases. And the level of detail is just as adequate, if not more, than in Bridgeman and Hahn. And so we submit that it is adequate. With respect to the critique of counsel for appellants, it seems, we would say, that their argument seems somewhat inconsistent. And it was the same kind of inconsistent argument to the district court. The thrust of their argument to the district court was, look at how much they worked on this case. It can't have been that meritless. And so they really were kind of more embracing the amount of work that was done and challenging the amount of work that was done. Now I hear my friend challenging the amount of work that was done. But as the court can see from the summary judgment briefing, there's testimony, deposition testimony cited in the summary judgment briefing. And so the record had to be developed in part of the district court's and part of this court's determination that there was an express license, was the testimony of the plaintiff, Ms. Loeb DeFever, that she acknowledged a number of, made a number of admissions that essentially acknowledged the express license. And it also took the development of the evidence in the case to develop the scope of the express license, because this court's opinion that affirmed it pointed out we have a dispute over the scope. And so there had to be a record developed over how many would be covered by it, what acts would be covered by it. And so it took a significant amount of discovery. It's not just a five-pager, as my friend suggests. And also the case, this is a case in which the plaintiff was requesting hundreds of millions of dollars from the various defendants. And in a case in which amounts of money like that, $469 million was being requested variously from the defendants. In a case like that, the defendants have no choice but to take it seriously and would have no choice to file, to develop the record with evidence. And as my friend pointed out in their brief, there were 190 pages of Rule 12 briefing. There were 450 pages of summary judgment briefing. A significant amount of work was done in the case. Mr. Edmonds, that seems to go to the issue of whether an award of fees was appropriate. Could you please address the calculation of the appropriate amount to be awarded? Yes. And I had divoted to that last issue, which was the third issue he raised. So with the calculation, we respectfully submit the Hunt case and the Richemont case that it relies on. And those cases in this court, in copyright cases, in which the fobey factors and then by implication Hensley is applied, don't require that level of detail. And we cited a number of other cases that point to that. There is, district courts have a wide latitude and that they don't have to get into detail to explain that. But the level of detail and saying the calculations here were no different than those in Richemont, which was affirmed by this court. The court's not required to go in to that level of detail. So the level of detail, we all see it in the opinion. He came up with a number that was approximately a third of what was requested. And as pointed out in Richemont, the court rejected the fees that it deemed unreasonable, thus accepting the fees that it deemed reasonable. It just didn't do more explicit calculations. Well, did it do any calculation? I'm struggling to figure out where the 500 number comes from, from the district court's four-page order. Well, the fee request was supported by approximately $1.5 million in fees. And consistent with the Richemont case, the district court did not provide its calculations. It awarded a modest subset of those fees. There are no other calculations in that. But we say Richemont and Hunn allow that to be done, Your Honor. Anything further, Mr. Mears? All right, Mr. Edmonds, thank you. Mr. George, I think you have three minutes left. Anyway, rebuttal time. Yes, Judge Selkirk, I'm going to start where Mr. Edmonds ended. That's always the fastest. So one of the things that Judge Edmonds said is—or, Judge Edmonds, listen to me. Mr. Edmonds said just generally was, you know, well, he did find it. It's a third. Rule 52A says the court must find the facts specifically and state its conclusions of law separately. There's no facts of the $500,000 specifically found. It just says, here's 500 grand. There's no facts specifically found. And the reason that is important to get to possibly your next question, Judge Selkirk, is that's how we appeal stuff. We appeal things by saying this is what the court found or the jury found. We disagree for X and Y reasons. Here we just have $500,000, period, end of story, without any rhyme or reason. And that's completely volatile of Rule 52. Now we go to Judge—Mr. Edmonds saying, well, look, we had to get into discovery. We had to do this. We had to do that. No. There's no even finding by the judge that it's vague, that it's ambiguous, that parole evidence is required. If it's vague, if it's ambiguous, if parole evidence is required, as Mr. Edmonds said today, literally just told us all this discovery was necessary, then how can it be objectively unreasonable under Fogarty? There were 100-plus pages of the motion of dismiss briefing that we want, that we were successful on going forward. And then we had to, according to Mr. Edmonds, go into all this discovery to figure out the scope of this express license. That makes it objectively reasonable. Judge Hanks did not find that our claims were frivolous under Fogarty. He really only concentrated on the objectively unreasonable element. Well, Mr. Edmonds has just told you that all of this factual investigation, all of this determination was necessary, and that Judge Hanks relied on it. By the very arguments we have today, Your Honor, we find that there are—we have to conclude that the claims were objectively reasonable. He says, well, they're objectively unreasonable because of the amount of money we sought. Well, that's not the standard. There's no standard in Fogarty that says if you request too much money, then that's the determination of whether or not it's objectively unreasonable is how much money you've asked for. We never tried this case, judges. We never tried this case. We never actually asked the jury for an amount of money, so saying what we pled for and what we were going to ask the ultimate finder of fact for is a red herring. The truth is the Copyright Act allows us to ask for any and all revenue, and then it flips the burden to the defendant to prove any and all expenses so that we can get to the profit model. The revenue here, because they kept flipping this property and flipping this property and flipping this property, the revenue was astronomical for this elderly facility home. Therefore, we did exactly what we were to do under the rule. We asked for the amount of money that was the revenue that had been generated as a result of this product. Going back to the questions, I'm trying to address all the questions that your honors asked. I do completely concur with Judge Oldham. The filing of the appeal may be extension, annulity. And let's not forget the fact that, as Mr. Edmonds told us, what actually happened here was Judge Hanks denied the fee request and said, I'll take it up later. That should have been appealed. He should have appealed that and said, no, we need our fees awarded now. We need the judgment amended, because the judgment as it stands says each party bears their own fees and costs. So unless you amend that judgment to say the parties don't bear their own fees and costs, that judgment needed to be appealed. In fact, that judgment was appealed, and the appeal was given up. Right or wrong, it was appealed, and that appeal was dropped by the defendants. There was no extension granted under 54D2B. There was no extension granted. Even if there was, it's annulity because we filed our notice of appeal and Mr. Edmonds filed his notice of appeal. The truth is here that Mr. Edmonds did exactly what he should have done. He appealed the district court's finding of no fees, and then he dropped that appeal. He must live with that decision today. I believe that covers all our issues, Your Honor. We've got about 30 seconds left for any questions, but that covers all the issues, I believe. Looks like there are no questions. We appreciate the gift of 20 seconds now. Thanks to both counsel for illuminating the issues for us. And that concludes this session, and I guess this panel is adjourned. Thank you so much, Your Honors, and thank you for accommodating my request a couple weeks ago. Certainly. Thank you, Your Honor. You can log out or whatever your button shows.